[No. 2790.]

## JUAN DURAN v. THE STATE.

1. MURDER—FACT CASE.—See the statement of the case for evidence held sufficient to sustain a verdict for murder in the first degree, with the death penalty.
2. SAME—NEW TRIAL.—See the opinion *in extenso* for a state of case wherein a new trial was properly refused.

APPEAL from the District Court of Presidio.   Tried below before the Hon. T. A. Falvey.

The opinion states the nature and result of the prosecution.

The statement of the accused after he was duly warned, taken down in writing, was first read in evidence by the State.   It reads as follows:

"When I was coming up with the cows last Saturday one week ago (I don't remember the exact day), at Smith's ranch, on the Pelegos, in Presidio county, Texas, the Chinaman was coming up at the same time. There was another Mexican at the ranch, taking care of the cows, named Guadalupe. When I got to the ranch Guadalupe told me that the Chinaman had about three hundred dollars. Guadalupe then kept after me until about eight o'clock at night to kill the Chinaman. About nine o'clock we went to kill him. I held the Chinaman by the feet until the other man killed him. We killed him in the house. There was nobody else around. If there was, I did not see them. Guadalupe killed the Chinaman with a gun by striking him on the head. He struck him on each side of the head and on the top. He struck him about five or six times. I held the Chinaman all the time. He was shaved on the front and sides of his head—shaved all over, but had a long strand hanging down his back. Guadalupe only abused me if I did not help to kill the Chinaman, and, rather than stand the abuse, I held the Chinaman while he killed him. I could have left if I had wanted to, and Guadalupe would not have done anything to me. I am over twenty-one years of age. After we killed the Chinaman we carried him to an arroyo, and dug a little hole and buried him. Guadalupe stripped all the clothes from him and carried them away with him when he left. We buried the Chinaman naked. The Chinaman's shirt was bloody. The Chinaman had three paper bills. Guadalupe took two and gave me one. We found five dollars in gold, also. I got that. Guadalupe took a pistol away from the Chinaman. In the scuffle the Chinaman grabbed his pistol. Then I caught the Chinaman and held him, and Guadalupe took his pistol. Guadalupe is a man about thirty years old. That is the pistol we took from the Chinaman—the pistol now in court.

his<br>"JUAN + DURAN."<br>mark

A. D. Smith was next introduced as a witness for the State. He testified that on or about the first of November, 1882, he employed the defendant to go to his ranch and assist Guadalupe Lacon attend to his cattle until Jesus Gonzales went to the election. Defendant went to the ranch and remained until Gonzales got back, which was on the ninth or tenth. In a few days Gonzales returned to Fort Davis and told the witness that he had

found a dead man buried near the ranch.   Witness advised him
to have the defendant arrested, which he did.   Witness was
present at the examining court when the defendant made the
voluntary statement which has been read on this trial.   Witness
is familiar with, and speaks and understands the Spanish lan-
guage, and knows that the statement read on this trial is the
same statement made by the defendant on the examining trial.
Though he had ample opportunity to escape since the murder of
the Chinaman, it does not appear that defendant made any
effort to escape before his arrest.   Defendant was arrested in
Fort Davis, Presidio county, Texas.   Guadalupe Lacon left the
ranch of the witness.   Witness did not know where he went or
where he is.

Witness went with Constable Latham to arrest defendant.
Latham asked the defendant where he got that pistol and five
dollar gold piece.   He said that another Mexican had given
them to him in payment of a debt of ten dollars.   He denied
knowing anything of the murder of the Chinaman.   Latham
immediately arrested him and took him before the justice of the
peace, where, having been warned, he made the statement
which has been read in evidence.   After this the witness went
to his ranch and found blood on the floor of the house, as if a
bloody something had been dragged over it.   Following this
trail he came to where a man was buried in a very shallow hole
on the side of the arroyo.   The arms and legs were protruding
from the ground, and had been partially eaten by hogs or some
other animals.   Witness took the corpse to be that of a China-
man, from its general appearance, and from the queue, pig-tail,
or long strand of hair on his head.   In a short time other China-
men came and took the remains away.

T. T. Harnett testified, for the State, that he was in the jus-
tice's court when the defendant made his voluntary statement.
It was substantially the same as that read in evidence.   Witness
was county attorney of Presidio county, Texas, at the time this
voluntary statement was made.   Defendant was duly cautioned
before he made the statement.   The witness could not say that
the defendant understood the interpreter, as he did not himself
know a great deal of the Spanish language. . Judge Stewart,
justice of the peace, before whom the statement was made, spoke
Spanish fluently and understood it thoroughly.

Jesus Gonzales testified to the discovery of the body of the
deceased, buried in manner described by preceding witnesses.

The dogs or other animals had eaten most of the flesh from the legs, which were protruding from the ground, as were the arms.

Another Gonzales was the next witness for the State. He testified, in substance, that about November 1, 1882, A. D. Smith sent the defendant to his ranch to assist Guadalupe Lacon in the care of his stock until the witness should return from the election at Fort Davis. When the witness returned after several days, Guadalupe Lacon had left the ranch and the defendant was still there in charge of the cattle. He appeared nervous and ill at ease, and told the witness that he must leave. Witness invited him to remain to breakfast, but he declined and left. When the witness entered the house, he found blood on the floor and on the butt of the gun, and indications that a bloody something had been dragged from the house. Next day witness found the deceased buried in a very shallow hole, with his legs and arms exposed and somewhat eaten by animals. Witness returned to Fort Davis and reported to A. D. Smith, who advised witness to have defendant arrested, which witness did.

Witness was present at the examining trial. On that trial defendant stated that he held the Chinaman's legs while Guadalupe killed him—that he held the Chinaman because Guadalupe threatened to kill him unless he did, and that he, defendant, was afraid that Guadalupe would execute his threat. The defendant stated that he and Guadalupe invited the Chinaman to stay over night with them, and that Guadalupe told him that the Chinaman had about three hundred dollars with him, and that he, the defendant, must help him, Gaudalupe, kill the Chinaman, otherwise he, Guadalupe, would kill the defendant. Defendant further stated that after they killed the Chinaman they dragged him off, dug a little hole, put the body in it, and covered it up; that he, defendant, got but one paper bill, the five dollar gold piece and the pistol, while Lacon got the other paper bills. The Chinaman looked like he had been dead about eight days.

In addition to the grounds referred to in the opinion, the motion for new trial set up that the verdict was contrary to law and evidence, and that it imposed a penalty excessive and cruel.

No brief for the appellant.

*J. H. Burts*, Assistant Attorney General, for the State.

WILLSON, JUDGE. This appeal is from a conviction of murder in the first degree, the penalty assessed being death. It was charged and proved that the deceased was a Chinaman, whose name was unknown. Defendant and one Gaudalupe Lacon, acting together, murdered the Chinaman for his money, by beating him to death with a gun, the defendant holding the deceased by the legs while Lacon inflicted the mortal blows. They concealed the dead body, after robbing it of all valuables, in an arroyo or gully near where the murder was committed, and in which place it was a few days afterwards discovered. Gaudalupe Lacon, immediately after the murder, left the country, and has not been since heard from.

Defendant was arrested a few days after the murder, and, upon his trial before an examining court, after being duly cautioned, made a voluntary statement in writing, confessing his guilt of the murder, and detailing the facts connected with it, which statement was read in evidence against him on his final trial, and was strongly corroborated by facts and circumstances testified to by witnesses for the State. There can be no doubt, from the evidence, of the defendant's guilt. Nor does the evidence leave any room for doubt as to the degree of the homicide. It was a cool, deliberate, cruel murder, actuated by the meanest of all motives—avarice. No objection is made to the charge of the court, nor is it open to objection, for it fully and clearly presented all the law of the case.

A motion for a new trial was made by the defendant, which was overruled. This motion was mainly upon the ground of newly discovered evidence, by which defendant alleged he could prove that he was mentally imbecile to such an extent that he was not responsible for his acts. Supporting affidavits accompanied the motion, but did not show such facts as would render the defendant irresponsible. Counter affidavits were filed by the prosecution, which disproved the alleged fact of defendant's mental imbecility, and very clearly established that his motion for a new trial was without merit. There was no error in overruling the motion for new trial.

After careful examination we find no error in this conviction. One ground of the defendant's motion for a new trial is that the punishment assessed is excessive. We cannot say that it is. True, the deceased was a Chinaman, a foreigner and a heathen, and of a race of people for which the civilized world has but little regard, but still he was a human being, and in the estima-

tion of the law his life was as precious, and as much entitled to protection, as that of the most exalted and best beloved citizen of our own State. We see no good reason why the defendant should not suffer the extreme penalty of the law, and the judgment of the court below is in all things affirmed.

*Affirmed.*

Opinion delivered May 12, 1883.